| | |
|---|---|
| TAUREAN SMALL,<br><br>      Plaintiff,<br>v.<br><br>OPEN AI LP, *et al.*,<br><br>      Defendants. | ORDER AND<br>MEMORANDUM AND<br>RECOMMENDATION |

This matter is before the court on Plaintiff Taurean Small's ("Small") amended application to proceed *in forma pauperis*, [DE-4],[1] and for frivolity review of the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), [DE-8]. Small has demonstrated sufficient evidence of inability to pay the required court costs and the application to proceed *in forma pauperis* is allowed; however, because the amended complaint fails to state a plausible claim upon which relief can be granted, it is recommended that the case be dismissed.

**I. Standard of Review**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the court shall dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from a defendant immune from such recovery. 28 U.S.C. § 1915(e)(2)(B)(i–iii); *see Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (explaining Congress enacted predecessor statute 28 U.S.C. § 1915(d) "to prevent abuse of the judicial system by parties who bear none of the ordinary financial disincentives to filing meritless claims"). A case is frivolous if it lacks an arguable basis in either law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *McLean v. United States*,

---

[1] Small's amended motion for leave to proceed *in forma pauperis*, [DE-4], supersedes his previously filed motion, [DE-2]. Accordingly, the Clerk shall terminate the motion at [DE-2].

566 F.3d 391, 399 (4th Cir. 2009). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327–28.

In order to state a claim on which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . .'" *Twombly*, 550 U.S. at 555. While a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions. *Id.*

In the present case, Small is proceeding *pro se*, and pleadings drafted by a *pro se* litigant are held to a less stringent standard than those drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. *See id.*; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994). However, the principles requiring generous construction of *pro se* complaints are not without limits; the district courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.     Discussion

Small filed an amended complaint against OpenAI LP and OpenAI Inc., Microsoft Corporation, Google LLC, Meta Platforms, Inc., Amazon.com, Inc., Adobe Inc., Activision Blizzard, Inc., Epic Games, Inc., Valve Corporation, Electronic Arts Inc., Sony Interactive Entertainment LLC, xAI Corp, and X Corp/X Holdings (collectively, "Defendants") for violations of 15 U.S.C. § 45, the Federal Trade Commission Act; 18 U.S.C. § 1030, the Computer Fraud and

2

Abuse Act; 47 U.S.C. § 230(e)(2), the Communications Decency Act; 17 U.S.C. § 101, the Copyright Act; 5 U.S.C. § 552a, the Privacy Act of 1974; 42 U.S.C. § 1985(3), "Civil Conspiracy to Deprive Rights"; *Bivens v. Six Unknown Named Agents*; 18 U.S.C. § 2701, the Stored Communications Act; the North Carolina Unfair and Deceptive Trade Practices Act; "constructive exploitation of cognitive labor"; and "hybrid agency-enabling theory of liability." [DE-8-1] at 2; 5; [DE-8-9] at 1. According to Small,

> between 2023 and 2025, Plaintiff interacted with multiple platforms controlled by Defendants, during which his cognitive labor and digital behavior were captured, analyzed, and integrated into AI products and services. This usage generated commercial advantage to Defendants while denying Plaintiff compensation, licensing terms, or opt-out mechanisms. Defendants track detailed telemetry and behavioral data from users. This data is routinely analyzed and incorporated into AI systems. These systems extract ongoing value from expressive cognitive labor. Plaintiff and others received no compensation for this data. Defendants treat gameplay as consumer behavior to avoid labor recognition.

[DE-8-1] at 6.

Small attached numerous exhibits to his complaint in the way of self-declarations that purportedly advance this position, including a "Declaration of Cognitive Labor Scope"; a declaration establishing Small as the Strategic Originator of the Strategic Restorative Equity Litigation ("SREL") system, a "self-directed litigation methodology designed to assert systemic claims against exploitative digital systems, with the purpose of realigning economic ownership and regulatory accountability through legal and equitable remedies"; a "Declaration of Royalty Justification," which outlines a proposed royalty rate of 1.5% to compensate the "proportional contribution of [Small's] cognitive labor to monetized outcomes"; a "Royalty Manifesto"; a "Declaration of Unjust Enrichment"; a declaration of "Digital/Virtual Civil Rights"; a "Declaration of Algorithmic Exploitation and Cognitive Servitude"; a "Declaration of Definitions and Discovery Instructions"; a "Declaration of Intent to Place Private Entities Under U.S. Department

3

of Labor Oversight Pursuant to 28 U.S.C. § 1746"; and an addendum outlining the wrongs allegedly committed by the "private sector defendants." [DE-8-2 to -8-10].[2] Small also subsequently filed the following documents related to his amended complaint: an "Affidavit on the Federal Recognition of Cognitive Value," [DE-9]; a motion to supplement the amended complaint to incorporate a document labelled "AI Creator Ambition Result" as an exhibit, [DE-10]; an "Affidavit in Support of Motion to Supplement Complaint," which contains the section headings "Technological Nostalgia" and "Cognitive Appropriation," [DE-11]; a motion to relate the instant case to *Small v. FTC*, No. 5:25-CV-239-FL,[3] [DE-12]; and a "Notice of Filing of Supplemental Exhibit E – Congressional Record of Cognitive Labor Collection," [DE-13]. Through this lawsuit, Small seeks $100,000,000.00 in actual and punitive damages for the alleged exploitation of his "cognitive input, data, and voice-derived outputs by AI systems across commercial platforms," in addition to royalties of 1.5% "on revenues tied to Plaintiff's data or input-derived AI outputs." [DE-8-1] at 6.

Small's claims must fail for a variety of reasons, not the least of which being that they raise significant Article III concerns. Small is a frequent *pro se* litigator in this court,[4] and as his

---

[2] Given Small's *pro se* status, the court may consider these documents when considering whether his complaint states a plausible claim for relief. *See Holley v. Combs*, No. 22-6177, 2025 WL 1035288, at *2 (4th Cir. Apr. 8, 2025) (citing *Garrett v. Elko*, 120 F.3d 261, 1997 WL 457667, at *1 (4th Cir. 1997) ("[I]n order to determine whether the claim of a *pro se* plaintiff can withstand a motion to dismiss, it is appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff.")).

[3] In *Small v. FTC*, Small alleges that the "modern digital economy, particularly in areas such as online gaming, streaming, and user-generated content, leverages the cognitive labor of individuals without formal recognition or compensation." Am. Compl. [DE-5] at 5. However, "despite the rise of cognitive labor as an economic driver, the Department of Labor has not issued any interpretive guidance or enforcement actions recognizing cognitive or digital labor under the FLSA," which constitutes a breach of statutory duty. *Id.* at 1, 5. Small seeks, *inter alia*, a declaratory judgment from the court stating that the FTC and NTIA "failed in their duty to prevent exploitation of digital cognitive labor" and an order mandating that the Department of Labor "issue interpretive guidance recognizing cognitive labor as labor within the scope of FLSA protections." *Id.* at 5–6. On frivolity review, the undersigned recommended dismissal of the amended complaint for failure to allege facts sufficient to establish a "case or controversy" as required by Article III. [DE-9].

[4] *See Small v. FTC*, No. 5:25-CV-239-FL; *Small v. ABM Industries, Inc.*, No. 5:25-CV-429-BO; *Small v. Checkr Inc.*, No. 5:25-CV-430-FL; *Small v. County of Cumberland*, 5:25-CT-3156-BO; *Small v. FTC*, No. 5:25-CV-330-M; *Small*

4

declaration detailing the "Strategic Restorative Equity Litigation system" makes clear, by filing multiple lawsuits related to the same topics, he ultimately wishes for the court system to act as a de facto regulator in a novel, rapidly evolving area of the law. *See* [DE-8-7] ("It is my intent, through this filing and future actions, to prompt the necessary reclassification of such practices under U.S. labor standards, and to advocate for legal recognition of cognitive labor protections in line with the Fair Labor Standards Act (FLSA) and emergent digital labor rights."). The problem with this approach is that, to establish standing under Article III, a plaintiff must satisfy three elements: "(i) that [ ]he has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Asanov v. Merchan*, No. 5:24-CV-514-FL, 2025 WL 1508007 at *1 (E.D.N.C. May 27, 2025) (quoting *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024)). And Small, who has alleged little to no concrete facts supporting his generalized, conclusory assertions that "Defendants retained and monetized [his] cognitive data and behavioral patterns to improve artificial intelligence systems and drive corporate revenues," cannot. *See* [DE-8-4] at 1.

Article III standing is vital—and indeed, jurisdictional—because it "screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *See Asanov*, 2025 WL 1508007 at *1 (quoting *All. for Hippocratic Med.*, 602 U.S. at 381); *Kelly v. Am. Bar Assoc.*, No. 5:24-CT-03047-M, 2024 WL 3419690, at *4 (E.D.N.C. June 28, 2024) ("[T]o invoke the power of a federal court, plaintiff must establish that he has standing under Article III of the Constitution.") (citations omitted). Federal courts are not "an open forum for citizens to press general complaints about the way in which government goes about its

*v. Smithfield Foods Inc.*, No. 5:25-CV-331-D; *Small v. Takeda Pharmaceuticals U.S.A. Inc.*, 5:25-CV-332-M.

5

business." *See Asanov*, 2025 WL 1508007 at *1 (quoting *All. for Hippocratic Med.*, 602 U.S. at 381). Nor do courts "opine on legal issues in response to citizens who might roam the country in search of governmental wrongdoing." *Id.* (quoting same). However, in the instant case, this is precisely what Small has asked the court to do.

Beginning with the first of the three elements of the standing analysis, Small has not alleged facts demonstrating an injury in fact, i.e., an injury that is "concrete" in "a personal and individual way and not ... a generalized grievance." *See id.* at *2 (quoting same). Small's blanket assertions regarding the use of personal data and artificial intelligence and this new technology's attempt to "redefine slavery," *see, e.g.*, [DE-8-5] at 1, are "general legal, moral, ideological, [and] policy" complaints not sufficient for Article III standing. *See id.* (quoting same). Small also does not have standing to bring claims *pro se* on behalf of all other alleged victims of so-called "cognitive labor exploitation," either as the Strategic Originator of the SREL framework or otherwise. *See id.* (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 244 (4th Cir. 2020)).

Second, with respect to what few and nebulous injuries Small has asserted on his own behalf, Small has not demonstrated that they "likely w[ere] caused or will be caused by the [Defendants]." *See id.* (quoting *All. for Hippocratic Med.*, 602 U.S. at 380). The allegations Small levels at the individual defendants are plentiful, incredibly generalized, and often difficult to follow. *See, e.g.*, [DE-8-7] at 1 ("[T]hese Defendants have obscured the nature of this labor through the strategic framing of participation as 'fun,' 'entertainment,' or 'recreation.' This marketing misleads consumers, especially minors and digital natives."); [DE-8-10] at 3 (stating that Adobe Inc. "[u]sed consumer uploads and creative inputs via Photoshop, Illustrator, and Firefly to train generative tools that now compete against the very users they learned from-without attribution or

6

royalty"); [DE-8-10] at 6 (stating that X Corp/X Holdings, "[a]s Twitter's successor, ... absorbed user timelines, DMs, voice data (Spaces), and behavior into internal AI training without compensation. Amplified cognitive and emotional input for AI product deign while denying users transparency."). In other words, they are not sufficient to show that Small has suffered concrete injuries fairly traceable to these specific Defendants. *See Asanov*, 2025 WL 1508007 at *2. "[P]laintiffs attempting to show causation generally cannot rely on speculation about the unfettered choices made by independent actors not before the courts." *All. for Hippocratic Med.*, 602 U.S. at 382 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 n.5 (2013); *Bennett v. Spear*, 520 U.S. 154, 168–169 (1997)). Thus, Small's allegations are simply "too speculative [and] too attenuated" to meet the second element required to establish standing under Article III. *See id.*

Third and finally, Small has not plausibly alleged that his injury "likely would be redressed by the requested judicial relief." *See Asanov*, 2025 WL 1508007 at *2 (quoting *All. for Hippocratic Med.*, 602 U.S. at 380). Causation and redressability are "often flip sides of the same coin," which is why in most standing disputes, the first and second elements of the analysis are the "two key questions." *All. for Hippocratic Med.*, 602 U.S. at 380–81. The instant case is no exception because, as explained *supra*, Small has only pleaded generalized grievances that are not clearly traceable to Small himself or attributable to a single defendant. Consequently, Small has failed to show that he has concrete injuries that are personal to him and capable of being redressed at all, much less that "the court has the power to grant [his] requested relief." *See Buscemi v. Bell*, 964 F.3d 252, 259 (4th Cir. 2020). Thus, he has failed to establish standing under Article III.

### III. Conclusion

For the reasons states above, the application to proceed *in forma pauperis* is allowed, and it is recommended that the amended complaint be dismissed.

7

Case 5:25-cv-00238-FL    Document 14    Filed 07/28/25    Page 7 of 8

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on Plaintiff. You shall have until **August 11, 2025**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If you do not file written objections to the Memorandum and Recommendation by the foregoing deadline, you will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, your failure to file written objections by the foregoing deadline will bar you from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

So ordered, this the 28th day of July, 2025.

Robert B. Jones, Jr.
United States Magistrate Judge

8